IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  Criminal No. 22-285 |
| RAMKUMAR RAYAPUREDDY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

Defendant Ramkumar Rayapureddy is charged in a four-count Indictment with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and three counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5 and 240.10b5-2; and 18 U.S.C. § 2. (Docket No. 3). Jury selection and trial are scheduled to commence on February 12, 2024. (Docket No. 189). Presently before the Court is the Government's Affirmative Motion in Limine to Admit Transaction Record "Diary" Pages Pursuant to Federal Rules of Evidence 803 and 106, (Docket No. 227), which is opposed by Defendant. (Docket No. 256). For reasons that follow, the Government's Motion will be denied without prejudice.

As background, the Indictment alleges that Defendant was the Chief Information Officer of Mylan N.V. ("Mylan"), a pharmaceutical company headquartered in Canonsburg, Pennsylvania. (Docket No. 3, ¶¶ 1, 2). In that role, Defendant oversaw Mylan's IT Department. (*Id.*, ¶ 2). Dayakar Mallu ("Mallu") was an employee in Mylan's IT Department from 2011 until his termination in March 2017. (*Id.*, ¶ 3). In summary, the Indictment alleges that Defendant provided Mallu with material non-public information relating to the status of Mylan's drug applications with the U.S. Food and Drug Administration, Mylan's earnings results and forthcoming announcements, and a merger, expecting that Mallu would use the information to

1

execute favorable trades in Mylan securities, and further expecting to receive benefits in return, including cash payment kickbacks. (*Id.*, ¶¶ 12.a, 12.b). The Indictment further alleges that Mallu used the information provided by Defendant to trade in Mylan securities, at times with significant profits, and Mallu then gave, and Defendant accepted, cash payments that represented a portion of the unlawful trading profits in Mylan's securities. (*Id.*, ¶¶ 12.c, 12.d). Defendant and Mallu allegedly engaged in cash transactions in foreign currency, used trusted intermediaries to deliver the cash in a foreign country, and used encrypted methods of communication to conceal the illegal nature of their conspiracy. (*Id.*, ¶ 12.d).

With this background, the Court turns to consideration of the Government's request to admit at trial pages of transaction logbooks (hereinafter, "diaries") recording payments allegedly made to Defendant on behalf of Mallu. (*See generally* Docket No. 227). The Government submits that the pages of the diaries at issue were kept by an associate of Mallu (the "associate"), and they contain handwritten records of payments that Mallu made to Defendant as part of the charged insider trading scheme. (*Id.* at 1-2). According to the Government, "[t]he records of these payments are kept amid [the associate's] logs of the transactions he maintained for his construction business in India." (*Id.* at 2). The associate provided the Government with the supposedly relevant pages, as well as other pages surrounding same, but he did not turn over the full diaries. (*Id.*). The Government represents that it "expects to introduce the relevant pages through Mallu's [associate], if he testifies," but it will not seek to admit the diary pages if the associate does not testify.[1] (*Id.*).

---

[1] As explained in the Government's Motion, on January 3, 2024, the associate informed the Government for the first time that he likely would not be able to travel to the United States for trial due to certain personal reasons. (Docket No. 227 at 2, n.2). In light of this development, the Government represented that it intended to inquire whether the associate would be willing to sit for a Rule 15 deposition in lieu of appearing in the United States, and indicated that it would update the defense and the Court accordingly. (*Id.*). The Court discussed this matter with the parties during a telephone conference of counsel held on January 18, 2024, but the Government did not know for certain at that time the associate's availability for trial, or willingness to sit for a Rule 15 deposition. Given that the Government has not provided any further update, the Court presumes that the Government still has not been informed of the associate's position on these matters.

The Government argues that the diary pages are admissible under Federal Rule of Evidence 803(6) as business records of the associate's construction business whose admission would be consistent with Rule 106, known as the Rule of Completeness.  (*Id.* at 2-5).

Defendant opposes admission of the diary pages as business records pursuant to Rule 803(6), arguing that they do not meet the record keeping and trustworthiness elements of the Rule.[2] (*See* Docket No. 256 at 2-4).  More specifically, Defendant contends that the Government is unable to show that the associate's record keeping methods were systematically employed in the ordinary course of his business.  (*Id.* at 4).  Defendant also maintains that the diary pages should be excluded as incomplete writings and improper duplicates.  (*Id.* at 4-5).

The Court analyzes whether the disputed diary pages are admissible pursuant to the applicable Federal Rules of Evidence.  To start, the parties do not dispute that the diary pages at issue constitute hearsay.  The Rules of Evidence define hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).

Hearsay is not admissible unless the Rules of Evidence, a federal statute, or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 802.  To that end, Federal Rules

---

[2] Relatedly, Defendant filed a Sealed Motion in Limine to Exclude Evidence of the Diaries in Their Entirety if [His] Experts are not Admitted, which is opposed by the Government. (Docket Nos. 223, 251).  Defendant argues that the diaries should be excluded (if the Court does not permit his two diary-related experts to testify consistent with their proposed opinions) because they cannot be authenticated, they are incomplete writings, they are improper duplicates, and they are hearsay which do not satisfy the business records exception under Rule 803(6). (Docket No. 223 at 2-6).  Regarding the two diary-related experts referenced by Defendant, the Government filed a Motion to Partially Exclude Testimony of Gerald LaPorte and Fully Exclude Testimony of Jennifer Naso.  (Docket No. 265). According to Defendant's expert disclosure, Mr. LaPorte is a forensic chemist and document dating specialist, and Ms. Naso is a forensic document examiner.  (Docket No. 265-1 at 24, 37).  The Government contends that Mr. LaPorte's testimony regarding the specific method of ink dating analysis is not a proper fit to this case, and his proposed testimony as it relates to that topic should be excluded.  (Docket No. 265 at 1, 5-8).  The Government further argues that the proposed testimony of Ms. Naso is either not in dispute or it is cumulative with the proposed testimony of Mr. LaPorte.  (*Id.* at 1, 8-11).  Given the Court's ruling herein, Defendant's Sealed Motion to exclude the diaries if his experts are not admitted and the Government's Motion to exclude certain testimony by Mr. LaPorte and Ms. Naso both will be denied as moot without prejudice by separate order.

of Evidence 803 and 804 identify certain exceptions to the rule against hearsay. One such exception contained in Rule 803, regardless of whether the declarant is available as a witness, is a record of a regularly conducted activity, which is admissible if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The Government advocates that the diaries are admissible under Rule 803(6) because: they "deal with financial transactions, many of which were regularly conducted activities as part of [the associate's] construction business;" they "were kept as a regular practice, recording financial transactions by date;" the associate "typically entered the details of the transactions within two days of when they occurred, and he always entered the exact transaction amount;" the associate "had the requisite knowledge of what was recorded;" and, there has been no showing of untrustworthiness concerning the source of the associate's information or the method or circumstances of the diaries' preparation. (Docket No. 227 at 4).

Putting aside the uncertainty of whether the associate will testify at trial (or a Rule 15 deposition),[3] the Court is not persuaded that the diary pages are admissible as a business record under Rule 803(b) based on the information presently available.  As stated, the Government submits that the diaries are admissible under Rule 803(6) because they "deal with financial transactions, many of which were regularly conducted activities as part of [the associate's] construction business."  (Docket No. 227 at 4).  Despite this broad contention, the Government does not explain how financial transactions of "payments that Mallu made to Defendant as part of the charged insider trading scheme," (Docket No. 227 at 1-2), are part of a regularly conducted activity of the associate's construction business.  *But cf. United States v. McPartlin*, 595 F.2d 1321, 1349 (7th Cir. 1979) ("As long as the recorded activities had become, properly or not, an integral part of Benton's business activities for Ingram, the records are not too personal to preclude admissibility.").  Perhaps somewhat tellingly, the Government states that "[t]he records of these payments are ***kept amid*** [the associate's] logs of the transactions he maintained for his construction business in India."  (Docket No. 227 at 2) (emphasis added).  The Government's representation that the records of Mallu's payments contained in the diaries are "kept amid" the associate's construction business transactions seems to suggest that they are not "kept in the course of a regularly conducted activity of [the associate's construction] business" and particularly calls into question whether they are "a regular practice of that activity" as required by Rule 803(6)(B) and

---

[3]   "In the Third Circuit, a party seeking to admit evidence as a business record must lay a foundation with a qualified witness who will testify that: 1) the declarant in the records had knowledge to make accurate statements, 2) the declarant recorded the statements contemporaneously with the actions which were the subject of the reports, 3) the declarant made the record in the regular course of the business activity, and 4) such records were kept regularly by the business."  *United States v. Onyenso*, Crim. No. 12–602, 2013 WL 5322686, at *1 (D.N.J. Sept. 20, 2013) (citing *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989)).

(C).[4]  Consequently, the Court finds that the diary pages are inadmissible under Rule 803(6) on the present record.[5]

Based on the foregoing, the Court enters the following Order:

AND NOW, this 25th day of January, 2024, IT IS HEREBY ORDERED that the Government's Affirmative Motion in Limine to Admit Transaction Record "Diary" Pages Pursuant to Federal Rules of Evidence 803 and 106, (Docket No. 227), is DENIED WITHOUT PREJUDICE.

<u>s/ W. Scott Hardy</u>  
W. Scott Hardy  
United States District Judge

cc/ecf: All counsel of record

---

[4] The Third Circuit Court of Appeals has instructed that "the regular practice requirement should be generously construed to favor admission." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 289 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). As an example, "it may well be that a record of a single meeting satisfied the regular practice requirement if the business in question routinely records other important meetings." *Id.* As explained herein, the Government has not provided a basis at this point for the Court to conclusively determine that records of payments Mallu made to Defendant as part of the charged insider trading scheme are kept in the course of a regularly conducted activity of the associate's construction business such that the regular practice requirement has been met in this case. *See, e.g., United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986) ("Miscellaneous jottings should not be admitted under Rule 803(6) just because they have some connection with a regular business.").

[5] The Court is cognizant that "Rule 803(6) favors admissibility if the evidence has any probative value whatsoever." *Onyenso*, 2013 WL 5322686, at *1 (citations omitted). As such, "[r]ecords should . . . be excluded only when the circumstances of the case raise questions sufficient to overcome the presumption of reliability that exists in properly established business records." *Id.* (citations omitted). At this juncture, such circumstances warranting exclusion exist for the reasons explained above. However, if the Government possesses or acquires additional information that it believes compel a contrary conclusion, the Government may renew its Motion.